UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEARICK SMITH,

                              Petitioner,

                                                          DECISION AND ORDER

-vs-

                                                          09-CR-6064 (CJS)
UNITED STATES OF AMERICA,                                 18-CV-6917 (CJS)

                              Respondent.

_____

INTRODUCTION

Petitioner Dearick Smith was a member of a street gang known as both the Chain Gang and as the Wolfpack, which was operating in Rochester, New York from 2006 through early 2009. After a jury trial in 2011, he was convicted and given an aggregate sentence of fifty years imprisonment on four charges: RICO conspiracy, in violation of 18 U.S.C. § 1962(d); knowingly and unlawfully possessing a firearm in furtherance of the RICO conspiracy, in violation of 18 U.S.C. § 924(c); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; and knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy, in violation of 18 U.S.C. § 924(c). The conviction and sentence were affirmed on appeal.

Now before the Court is Smith's application pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Pet., Dec. 14, 2018, ECF No. 1431. Petitioner maintains that he received the ineffective assistance of counsel, and that his conviction of knowingly and unlawfully possessing a firearm in furtherance of the RICO conspiracy in violation of 18 U.S.C. § 924(c) should be vacated under *United States v. Davis*, 139 S.Ct. 2319 (2019).

1

For the reasons set forth below, the application [ECF No. 1431] is denied with respect to Smith's arguments that he received the ineffective assistance of counsel. However, the application [ECF No. 1431] is granted with respect to Petitioner's request to vacate his conviction on the charge of knowingly and unlawfully possessing a firearm in furtherance of the RICO conspiracy in violation of 18 U.S.C. § 924(c). *See United States v. Capers*, 20 F.4th 105, 119 n. 10 (2d Cir. 2021) (noting that the logic underlying the Second Circuit's decision affirming Petitioner's § 924(c) conviction based on the RICO conspiracy has been "abrogated by *Davis*'s invalidation of the residual clause."). Counsel for Petitioner is directed to contact the Court within fourteen (14) days from the date of this order to schedule a plenary resentencing on the remaining three convictions: RICO conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; and knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy, in violation of 18 U.S.C. § 924(c).

## BACKGROUND

The reader is presumed to be familiar with the factual and procedural background of this case. In affirming Petitioner's sentence, the Second Circuit provided a concise summary of much of the relevant detail:

> In 2011, Defendants-Appellants Dearick Smith [i.e., Petitioner], Michael Jackson, and Russell Hampton were tried by a jury for crimes alleged to have been committed by each during the period from 2006 through early 2009, as members of the violent Chain Gang (also known as the Wolfpack street gang), which was then operating in Rochester, New York. The jury found each guilty of RICO conspiracy, in violation of 18 U.S.C. § 1962(d); knowingly and unlawfully possessing a firearm in furtherance of that RICO conspiracy, in violation of 18 U.S.C. § 924(c); and conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846. The jury also found [Petitioner] and Jackson guilty of knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy, in violation of 18 U.S.C. § 924(c).

2

*United States v. Scott*, 681 F. App'x 89, 91–92 (2d Cir. 2017).

After the verdict, Petitioner joined in a supplemental motion under Rule 29 of the Federal Rules of Criminal Procedure, seeking a judgment of acquittal based upon the application of the federal Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031, *et seq.* Order, 1, Oct. 30, 2012, ECF No. 903. Petitioner noted that all of the conduct for which he was convicted occurred before he turned eighteen years of age, and argued that he was entitled to acquittal under the JDA because the jury's failure to specifically find that "he engaged in post-eighteen conduct, thereby 'ratifying' his participation in the conspiracy" divested the Court of subject matter jurisdiction in the matter. Order at 2. After hearing oral argument, the Court found:

> Whether this Court, upon request by defendants, would have been required to instruct the jury that they must be unanimous beyond a reasonable doubt as to a finding of post-18 activity before they could return a verdict of guilty even if viewed in a light most favorable . . . to the defendants a[s] opposed to the government is at best not clear. What is clear, however, is that despite being given ample opportunity to request specific instructions, defendants never asked for such a charge nor was there any objection to the failure to give such instruction at the time the jury was in fact charged . . . . so the plain error standard applies . . . .
>
> * * *
>
> The Court finds here that there was no plain error . . . . there has been no showing that the error affected any substantial rights or the error in any way impaired the integrity, fairness or public reputation of the proceedings.

Hrg. Tr., 16:6–18:5, Oct. 30, 2012, ECF No. 903-1 (quoting *United States v. Vargas-De Jesus*, 618 F.3d 59 (1st Cir. 2010)) (internal quotation marks omitted). Thereafter, Petitioner was sentenced to 50 years' imprisonment. *Scott*, 681 F. App'x at 92.

Petitioner challenged the Court's ruling on the JDA issue on appeal, but the

3

Second Circuit affirmed. *Scott*, 681 F. App'x at 97. Petitioner now moves the Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

LEGAL STANDARDS

As indicated above, the primary matter before this Court is a petition for habeas relief pursuant to 28 U.S.C. § 2255, on the grounds that the petitioner received the ineffective assistance of counsel. § 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Most claims under § 2255 are procedurally barred if they are not pursued on direct appeal. *See Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010). However, ineffective assistance of counsel claims may be raised in a § 2255 petition even though they were not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Indeed, as the Supreme Court has stated, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because collateral attack allows the claim to be "litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Id.* at 505–06.

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S.

668 (1984). A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). When applying this first *Strickland* prong, courts must be mindful of the variety of approaches effective attorneys might employ when dealing with a particular set of facts, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 689). Hence, the Court must "consider the circumstances counsel faced at the time of the relevant conduct and . . . evaluate the conduct from counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). In this context, "'[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable." *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (internal quotation marks and citation omitted).

Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland* at 687-88. That is, he must show there is a "reasonable probability" that *but for* counsel's error, the outcome of the proceeding would have been different. *Strickland* at 694. In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors. *Gersten*, 426 F.3d at 611. The strength of the government's case is relevant to this analysis. *See United States v. Wilke*, No. 09-CR-6099 CJS, 2017 WL 3167657, at *2 (W.D.N.Y. July 25, 2017) (citing *Rosario v. Ercole*,

601 F.3d 118, 136 (2d Cir. 2010)).

DISCUSSION

Petitioner identifies eight instances of what he believes to constitute the ineffective assistance of trial counsel. Certification of Defendant ("Def.'s Cert."), Dec. 14, 2018, ECF No. 1431. Specifically, Petitioner claims that trial counsel: (1) misadvised him on the ratification issue, failed to sufficiently contest proofs of his guilt, and failed to ensure complete jury instructions (¶ 3–5); (2) failed to sufficiently investigate and obtain defense witnesses (¶ 6–8); (3) misadvised him about his right to testify on his own behalf, and the risks and rewards of testifying or not testifying before the jury (¶ 9); (4) misadvised him about the content and consequence of a "drug stipulation" made at trial (¶ 10); (5) along with Petitioner's appellate attorney, failed to sufficiently contest the alleged drug conspiracy and related crimes that Petitioner was charged with (¶ 11); (6) failed to ensure Petitioner received the proper credit for time-served against his sentence (¶ 12); (7) improperly advised Petitioner to reject a plea offer (Decl., June 6, 2019, ECF No. 1463); and (8) failed to resolve a conflict of interest with counsel to one of Petitioner's co-defendants (Letter, Dec. 9, 2019, ECF No. 1500). The Court declines to grant a hearing on these claims, as "the motion and the files and records of the case conclusively show that" Petitioner is not entitled to any relief." 28 U.S.C. § 2255(b).

1. Petitioner's ineffective assistance claim fails with respect to the ratification issue because Petitioner cannot show the attorney's conduct fell below an objective standard of reasonableness.

Petitioner maintains that his trial counsel was constitutionally deficient because counsel "misadvised [Petitioner] about the ratification aspect of the charges against [him], failed to sufficiently challenge and contest the Government's proof in this regard, and

failed to ensure that the jury was completely instructed on this." Def.'s Cert. at ¶ 3. That is, Petitioner believes that his trial counsel failed to properly advise him of the limits to the Court's jurisdiction imposed by the Juvenile Delinquency Act ("JDA"), and failed to ensure that those limits were protected through appropriate jury instructions. The government argues that this claim is procedurally barred because it is nothing more than a repackaging of an issue that Petitioner fully litigated on appeal, and in any event that Petitioner cannot show prejudice. Mem. in Opp. at 9–12. The Court agrees with the government.

On direct appeal of their conviction in this Court, Petitioner and his co-defendants argued that the JDA "divested the District Court of jurisdiction over their prosecutions for the charged RICO and narcotics conspiracies . . . . [and] the District Court erred in failing to instruct the jury on the JDA's requirements and to request its specific determination of the relevant facts." *Scott*, 681 F. App'x at 92. In addressing Petitioner's argument, the Second Circuit observed that in *United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994), "we interpreted the JDA to permit federal prosecution of such a defendant for certain continuing crimes . . . when the charged crime began before the defendant reached the age of eighteen and he affirmatively continued his participation after his eighteenth birthday . . . . The *Wong* court relied on the jury's findings to satisfy the requirement, but we did not there hold that a jury determination was required." *Scott*, 681 F. App'x at 93 (citing *Wong*, 40 F.3d at 1365) (footnote omitted). Further, the circuit court stated that even if it were inclined to require such a specific jury determination:

> [D]efendants' challenges to their convictions . . . fail because none of them demonstrate that the court's error in not seeking that express determination affected substantial rights, as required on plain error review. At trial, the

government offered evidence that [Petitioner], Jackson, and Hampton each participated in both the RICO and narcotics conspiracies . . . after reaching the age of majority. The evidence showed that [Petitioner], after reaching his eighteenth birthday, fled during a traffic stop from a car driven by another gang member and containing a gun—an incident that resulted in his guilty plea to a charge of gun possession . . . . In light of this uncontroverted evidence of post-majority participation and . . . failure to timely raise an objection to JDA jurisdiction, we find no plain error.

*Scott*, 681 F. App'x at 93.

To begin with, as the government correctly notes, "[i]t is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (internal quotation marks and citation omitted). Yet even assuming Petitioner's good faith in making an ineffective assistance claim based on the JDA, the claim has no merit. The statute does not mandate, and neither the Supreme Court nor the Second Circuit have held, that a jury determination is required to meet the "ratification" requirement under the JDA. *Scott*, 681 F. App'x at 93 (discussing *United States v. Wong*). Given the absence of controlling authority on the issue, Petitioner's ratification argument "was not so obvious that it was objectively unreasonable for his trial counsel to forgo it . . . ." *Weingarten v. United States*, 865 F.3d 48, 58 (2d Cir. 2017) (finding petitioner was not entitled to relief on an ineffective assistance claim under § 2255 where trial counsel did not raise the "complex" and "difficult" issue of whether 18 U.S.C. § 3283 applied retroactively); *see also Love v. Smith*, No. CV-08-3746 (BMC), 2009 WL 2422384, at *7 (E.D.N.Y. Aug. 6, 2009) (denying habeas relief on an ineffective assistance claim under § 2254 where trial counsel did not object to a justification charge that did not include "stop-consideration" language, and where "there is no clear state rule on whether the stop-consideration language must

be included").

Further, even if Petitioner's representation was constitutionally deficient in failing to raise the issue, there is no reasonable probability that the result would have been different but for trial counsel's failure to both advise Petitioner on the JDA jurisdiction issue and seek a jury instruction from the Court. As the Second Circuit stated when Petitioner raised the issue on direct appeal, the government offered uncontroverted evidence at trial that Petitioner participated in both the RICO and narcotics conspiracies charges after reaching the age of majority. In particular, "[t]he evidence showed that [Petitioner], after reaching his eighteenth birthday, fled during a traffic stop from a car driven by another gang member and containing a gun—an incident that resulted in his guilty plea to a charge of gun possession." *Scott*, 681 F. App'x at 93.

As a result, the Court finds Petitioner did not receive the ineffective assistance of counsel as it relates to the issue of ratification.

<u>2. Petitioner's claim that trial counsel was ineffective for failing to sufficiently investigate and obtain defense witnesses is without merit because it is a question of trial strategy and tactics</u>.

Second, Petitioner argues that trial counsel was ineffective for failing to sufficiently investigate and obtain two witnesses on Petitioner's behalf. Def.'s Cert. at ¶ 6. The first potential witness, Courtney Love, "was an alleged rival gang member" who Petitioner played football with as a child and spoke with in jail, and who Plaintiff states was willing to testify "that there may have been feuds between certain people but that there were no group or gang feuds that [Petitioner] was involved in." Def.'s Cert. at ¶ 7. The second potential witness, Trevonn Morgan, a government informant who was not called by the government at trial, was willing to testify that "he was not on his [bipolar] meds when he

sat with the government and was coerced into saying the things he wrote" that were damaging to Petitioner. Def.'s Cert. at ¶ 8.

"It is well-settled that the decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *Coke v. Superintendent, Green Haven Corr. Facility*, No. 06–CV–811, 2010 WL 475274, at *7 (W.D.N.Y. Feb. 5, 2010) (alterations and internal quotation marks omitted) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987)). Accordingly, "[c]ourts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005). "At the same time, however, the decision not to call a witness must be grounded in some strategy that advances the client's interests." *Eze v. Senkowski*, 321 F.3d 110, 129 (2d Cir. 2003). "In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information." *Schulz v. Marshall*, 528 F. Supp.2d 77, 96 n. 13 (E.D.N.Y. 2007), *aff'd sub nom. Schulz v. Marshal*, 345 F. App'x 627 (2d Cir. 2009)

In the present case, even assuming – without finding – that counsel *should have* investigated the two witnesses that Petitioner identifies, the Court finds that Petitioner has failed to demonstrate that it is reasonably likely that the testimony of these witnesses would have altered the outcome of the case. To begin with, Petitioner has failed to show how Trevonn Morgan's testimony would even be relevant to the jury's decision to convict. Morgan would allegedly have testified that he was coerced into giving the government information, and that his information was unreliable given that he was not on his bipolar

medicine. However, as Petitioner himself admits, the government "dropped [Morgan] as a witness as soon as they found out he lied about everything." Def.'s Cert. at ¶ 8. Consequently, Morgan's evidence never made it before the jury, and his testimony that he was coerced into providing evidence to the government could have little or no relevance to the case against Petitioner.

With respect to Courtney Love's alleged willingness to testify that Petitioner was not part of any "group or gang feuds," the Court finds that Petitioner has not shown that there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001). Presumably, Petitioner is suggesting that Courtney Love's testimony would have been evidence of his innocence of the RICO conspiracy, which was predicated on the murder of Carmella Rogers, and attempted murders of Michael Couser, Michael Oliver, and Coty Wearen. However, testimony from a childhood acquaintance that Petitioner was not involved in gang feuds pales in comparison with the testimony of close friends such Petitioner like Isaiah "Izzy" Woods, who not only testified that Petitioner was a member of the Chain Gang, but gave detailed accounts of Petitioner's firearm, as well as the various shooting incidents that Petitioner was allegedly connected with. *See, e.g.,* Trial Tr. Vol XIV, 2559:12–2564:5, Jul. 10, 2015, ECF No. 1168. In the face of such "overwhelming record support" for Petitioner's guilt, the Court cannot say that Love's alleged testimony undermines the Court's confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. *See also Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984) ("overwhelming" evidence indicating that the

defendant committed the crime overcame any possible prejudice).

Consequently, the Court finds trial counsel's failure to investigate and call Courtney Love and Trayvonn Morgan as witnesses at trial did not constitute the ineffective assistance of counsel.

<u>3. Petitioner's claim that trial counsel misadvised him about his right to testify is without merit because the trial court conducted a colloquy directly with Petitioner on the issue.</u>

Third, Petitioner claims that trial counsel "misadvised [him] about [his] rights to testify on [his] own behalf and the risks and rewards of testifying or not testifying before the jury." Def.'s Cert. at ¶ 9. He states that trial counsel told him not to testify because he had a criminal record, and would likely incriminate himself, which caused Petitioner not to take the stand to pit his word against the hearsay evidence of the government witnesses. *Id*. In response, the government maintains that the record completely refutes Petitioner's claim because the Court engaged Petitioner directly in a colloquy regarding his right to testify and found that Petitioner made a knowing and intelligent waiver of his rights. Mem. in Opp. at 15.

"At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "Failing to advise a defendant of his right to testify or overriding the defendant's desire to testify can constitute ineffective assistance, if the claim meets the requirements of *Strickland v. Washington*." *Qualls v. United States*, No. 06-CV-5852(DLI), 2021 WL 2986707, at *8 (E.D.N.Y. July 15, 2021) (citing *Brown v. Artuz*, 124 F.3d 73, 79–81 (2d Cir. 1997)). The *Strickland* standard, however, is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382

(1986).

As the government points out, before closing the evidentiary record in the present case, the Court was especially careful to ensure that Petitioner was aware of his right to testify.

> THE COURT: Let me address myself to the defendants . . . Do you recall – – but I'm guessing somewhere in the course of the proceedings, I explained to you there are certain decisions left to the lawyer and some decisions left strictly to you. One of the decisions that is left strictly to you is whether you want to testify in your own defense. Obviously, you should consult with your lawyer and listen to what he says, but, ultimately, that is your decision. Do each of you understand that?
>
> [PETITIONER]: Yes.
>
> * * *
>
> THE COURT: And, [Petitioner], again, you've discussed this with [trial counsel]?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: And you're exercising your constitutional right not to testify; is that correct?
>
> [PETITIONER]: Yes.

Trial Tr. (Vol. XVII), 3219:14–3220:18, Jul. 16, 2015, ECF No. 1176. Based on this exchange, the Court found that "each of the defendants has made a knowing and intelligent decision, they've been here throughout the case, to exercise their right not to testify . . . ." Trial Tr. (Vol. XVII) at 3221:8–11.

Given the foregoing exchange, the Court finds that Petitioner has failed to show that trial counsel's performance was deficient with respect to Petitioner's Fifth Amendment right to testify. Petitioner affirmed to the Court at trial that he had discussed the issue with counsel, but understood that, ultimately, whether or not he took the stand

was his decision. Trial Tr. (Vol. XVII) at 3219:21–24. He then affirmed that he was exercising his constitutional right not to testify. Trial Tr. (Vol. XVII) at 3220:18. The only explanation he offers in the instant petition that his will to testify was "overridden" by trial counsel was that trial counsel warned Petitioner not to testify because his credibility would be attacked, and informed him he would be "messing up" his appeal if he lost by testifying. Def.'s Cert. at ¶ 9. This is not enough to show constitutionally deficient representation.

<u>4. Petitioner's claim that trial counsel misadvised him about the content and consequence of Petitioner's stipulation to the identity of the drugs discovered in Petitioner's various hangouts is without merit because Petitioner cannot demonstrate prejudice.</u>

Fourth, Petitioner states that his trial counsel misadvised him about the content and consequences of a "drug stipulation" made at trial and submitted to the jury, telling Petitioner that the stipulation "was only to prove that the drugs were not" his. Def.'s Cert. at ¶ 10. Petitioner maintains that the stipulation actually hurt his chances because "the government used the stipulation exactly to prove that the drugs were" Petitioner's. Def.'s Cert. at ¶ 10.

Towards the end of the government's evidence at trial, the Court addressed the issue of a proposed stipulation with the parties. At that time, Petitioner spoke up: "Your Honor, can I speak? I just don't understand the stipulation." Trial Tr. (Vol. XVII), 3085, Jul. 16, 2015, ECF No. 1176. The Court then explained:

> THE COURT: Let me explain it to you. And I don't know it all, but let me explain it to you, okay? I think the basis of the stipulation was that the government doesn't have to call the lab people. The lab people are going to say, I assume, and you can have a seat, and I can't tell you exactly, Mr. Smith, but this is – I've sat on a lot of these cases, and here is what they typically say . . . .

> * * *

First thing, they testify to their qualifications. Typically they have a background in chemistry and been working at the lab. Then they testify about retrieving samples from the locked evidence vault . . . . They retrieve evidence samples, presumably we've heard testimony about. And then they testify as to tests they conducted. I'm trying to remember. I think with cocaine, it's usually gas chromatography, and then they offer their opinion that the samples they tested contained cocaine. And they'll go one step further, and it's crack cocaine. That is the nature of the testimony. It's scientific testimony indicating that the samples – obviously they can't connect it with anybody. They don't know where it came from. They can say we got this from the locked evidence vault. That is typically what happens. So they're essentially being called to say that, based on the tests I performed, it contains cocaine or it contains the crystal form called cocaine base, that is typically – they may also testify, too, they weighed the sample, they took the bag, they weighed what was in it and they'll come up with a weight. The stipulations that I've seen in the past typically are that I weighed it, it weighed this amount, in my opinion it's crack cocaine or cocaine base. That is usually, again, I haven't heard it, and I don't know what the stipulation is in this case, that is usually, when stipulations are reached, what they say. And if they testify, that is typically what they testify to. Mr. [Prosecutor], is that a fair account of what the stipulation would be?

[PROSECUTOR]: It would be purely scientific testimony. They're not going to say who possessed, just we got this exhibit, all of the exhibits that have been admitted into evidence, and we did a chemical test on it.

[PETITIONER]: So I'm agreeing that is how much these substances weigh. I don't know how much the substances weigh.

THE COURT: That is essentially what you would be doing. You would be agreeing that, let's say exhibit 5 contained – purportedly the cops have tested to field test, as so many of them do. You would be agreeing that when the person weighed it, the lab person, that is what it weighed, otherwise the lab person is going to come up and say, I weighed it and this is how much it weighed. That is typically what they're going to be doing. Yes, they retrieved it. How much did it weigh. This is what it weighed and then they would testify to chemical tests they performed. That is typically what they testify to. So, why don't you take five minutes to discuss it [with your counsel].

Trial Tr. (XVII) at 3085:15–3087:23. Thereafter, the defendants conferred with their attorneys and agreed to the stipulation, which was entered into evidence as government's

Exhibit 800. Trial Tr. (XVII) at 3142:23–24.

Regardless of the advice trial counsel provided Petitioner when discussing the stipulation, the Court finds that encouraging Petitioner to agree to the drug quantity stipulation did not violate Petitioner's constitutional rights because Petitioner cannot show prejudice. As the Court explained at trial, the stipulation concerned scientific evidence regarding the identity and quantity of the substances in over twenty bags that had been recovered by law enforcement during multiple different crime scene investigations. As the government stated on the record, the bags themselves, as well as the location of their recovery, had already been entered into evidence throughout the trial; the stipulation was merely to the scientific evidence which demonstrated the content of those bags. Trial Tr. (XVII) at 3087:6–9. Moreover, there is nothing in the stipulation that identifies any of the defendants in the case, or attempts to "say who possessed" the bags. Trial Tr. (XVII) at 3087:7. Given the availability of scientific experts to testify to the truth of the facts in the stipulation the following day (Trial Tr. (Vol XVII) at 3088:11), as well as the significant amount of testimonial evidence tying Petitioner to the drug conspiracy from both law enforcement and other Chain Gang members, the Court cannot say there is a reasonable probability that *but for* Petitioner's agreement to the stipulation, the outcome of the case would have been different.

<u>5. Petitioner's claim that trial and appellate counsel failed to sufficiently contest the alleged drug conspiracy and related crimes is without merit because the record demonstrates both attorneys were reasonably effective</u>.

Fifth, Petitioner argues that his trial and appeal attorneys failed to sufficiently contest the alleged drug conspiracy and related crimes charged against him. Def.'s Cert. at ¶ 11. He states, among other things, that "[n]obody testified about me selling drugs,"

that "no act was determined that I committed as an adult," and that "[n]o witness testified that I even possessed a gun." Def.'s Cert. at ¶ 11.

The government argues that, contrary to Petitioner's allegations, Petitioner's "trial counsel presented a strong case for [Petitioner] and made every argument for him . . . ." Mem. in Opp. at 18–20. Specifically, the government notes that trial counsel "strenuously defended" Petitioner through pretrial motion and argument, trial preparation and witness cross-examination, a motion for a judgment of acquittal, and a challenge to the § 851 information the government filed against Petitioner. The Court agrees.

*Trial Counsel*

To begin with, on April 6, 2010, trial counsel represented Petitioner before the Court in a pretrial *Huntley* and *Wade* hearing to suppress certain statements made by Petitioner following a March 2007 arrest affirming his involvement with the Chain Gang and the sale of drugs, as well as identification evidence related to the August 2008 traffic stop that associated Petitioner with possession of a firearm. Hrg. Tr., May 6, 2011, ECF No. 667. Despite trial counsel's vigorous cross-examination, the Court denied counsel's motion to suppress statements and identification. Min. Entry, Apr. 6, 2010, ECF No. 439.

At trial, trial counsel also forcefully contested testimonial evidence offered against Petitioner. For instance, trial counsel challenged witness Gerod Wynne's accounts of the attempted murder of Michael Couser, and attempted to undermine his credibility. Trial Tr. (Vol. XII), 2139–2156, June 30, 2015, ECF No. 1159. He also challenged key witness Isaiah "Izzy" Woods' credibility and his account of several key facts and incidents, including those related to the attempted murder of Coty Wearen and the murder of Carmella Rogers. Trial Tr. (Vol. XIV) at 2679–2691). Trial counsel's summation was also

17

effective, calling into question the government's proofs regarding both the conspiracies and the gun charges associated with them. *See, esp.*, Trial Tr. (Vol. XIX), 3442–3456, Dec. 15, 2015, ECF No. 1220.

Lastly, following the jury's guilty verdict, trial counsel joined in a supplemental motion to acquit Petitioner based on the Court's jurisdiction – or alleged lack thereof – based on the Juvenile Delinquency Act, and vigorously contested the government's § 851 information against him. *See, e.g.,* Hrg. Tr., Jul. 20, 2015, ECF No. 1177. Although the Court was not ultimately persuaded by trial counsel's arguments on either issue, the issues were nevertheless thoughtfully and professionally presented. Accordingly, the Court finds Petitioner's argument that trial counsel was constitutionally deficient due to his failure to adequately contest the proofs against Petitioner to be without merit.

*Appellate Counsel*

A claim for ineffective assistance of appellate counsel is evaluated by the same standard as is a claim of ineffective assistance of trial counsel. *Muldrow v. Herbert,* 299 F. Supp.2d 166, 169 (W.D.N.Y. 2004). To demonstrate the ineffectiveness of appellate counsel, "it is not sufficient for the defendant to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted). Rather, a petitioner may only establish constitutionally inadequate performance by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. *Id.*

In the present case, Petitioner's appellate counsel raised a single issue and joined in co-defendant's arguments on appeal in a thorough and well-written appellate brief to

18

the Second Circuit. Brief for Defendant-Appellant Dearick Smith*, United States* v. *Scott et al.*, 2016 WL 3579797 (C.A.2). In a careful review of the evidence, appellate counsel argued that all of the overt acts in furtherance of the RICO conspiracy that the jury found to be proven by the government – the murder of Carmella Rogers, the attempted murder of Michael Couser, the attempted murder of Michael Oliver, the attempted Murder of Coty Wearen, and the intent to distribute 50 grams or more of cocaine base – all occurred before Petitioner turned eighteen in June 2008. Appellant's Brief at 18–19. Counsel then implored the Second Circuit to revisit its decision in *Wong*, effectively arguing that Petitioner's sentence was "grotesque and a miscarriage of justice" because "[n]o juvenile turning eighteen years old could possibly know that the conduct he committed as a sixteen- or seventeen-year-old might result in his serving a 50-year prison sentence if he persisted in his ways after he became an adult." Appellant's Brief at 28.

The Court finds that in pursuing this line of argument, appellate counsel selected perhaps the strongest basis for contesting the jury verdict in a case in which the evidence of Petitioner's involvement in the Chain Gang and related criminal conduct was overwhelming. Because Petitioner has failed to demonstrate that his appellate counsel's performance was unreasonable, he cannot meet the first prong of the *Strickland* standard by which ineffective assistance claims are judged. Hence, the Court finds Petitioner did not receive the ineffective assistance of counsel from appellate counsel.

6. Petitioner's claim that trial counsel failed to ensure that he received the proper credit for time served is without merit because neither trial counsel nor the trial court has any control over credit for time served.

Sixth, Petitioner indicates that trial counsel told him that "all" of his time spent in custody prior to sentencing, including time on a concurrent state sentence, would count

19

towards his sentence in federal custody. Def.'s Cert. at ¶ 12. He maintains that trial counsel was ineffective, however, because he "failed to ensure that all [Petitioner's] time was properly counted in arguing the sentencing on [Petitioner's] behalf before the District court judge," which he alleges resulted in the Bureau of Prisons ("BOP") giving Petitioner four years less credit for time served than he says he was due. Def.'s Cert. at ¶ 12.

The Court notes that "[t]he Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b); the district courts do not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculations." *United States v. Whaley*, 148 F.3d 205, 206–07 (2d Cir. 1998) (citing, *inter alia*, *United States v. Wilson*, 503 U.S. 329, 333 (1992)). Consequently, the Court finds that Petitioner has failed to show constitutionally deficient assistance because he cannot show prejudice. Even assuming that trial counsel failed to take steps to inform the Court as to what the proper sentencing calculations ought to have been and what credit Petitioner ought to have received, the Court had no authority to make those credit determinations. Further, had the Court awarded or denied credit, "[b]ecause the district court lacks the authority to [to do so], the BOP [would not have been] bound by its decision." *In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 439 (5th Cir. 2019) (citing *Mehta v. Wigen*, 597 F. App'x 676, 680 (3d Cir. 2015)).

For the foregoing reasons, the Court finds Petitioner did not receive the ineffective assistance of counsel with regards to his sentencing.

7. Petitioner's claim that trial counsel rendered ineffective assistance by advising Petitioner to reject guilty plea offers and proceed to trial is without merit.

Seventh, Petitioner maintains that "trial counsel rendered ineffective assistance of

counsel by advising [Petitioner] to reject guilty plea offers and proceed to trial. But for counsel's deficient advice, [Petitioner] would have pled guilty instead of going to trial." Decl. (Decl. of Counsel), ¶ 3, June 6, 2019, ECF No. 1463. Specifically, Petitioner states that trial counsel advised him to reject the plea offer because he "could not be convicted of the RICO conspiracy due to the Government's lack of substantial evidence against" him, because "our word against the Government's would even out in [Petitioner's] favor," and because "this was everyone's . . . first time doing a RICO case . . . [and] the Government would make mistakes . . . ." Decl. (Smith's Aff.), ¶ 3–6, June 6, 2019, ECF No. 1463. The government argues that "the record belies [Petitioner]'s allegations." Mem. in Opp. at 21.

With respect to the first prong of the *Strickland* inquiry, under prevailing professional standards, defense counsel must provide the defendant the benefit of counsel's professional advice on the decision of whether to plead guilty, enabling the client to make an informed decision by communicating the terms of the plea offer, the strengths and weaknesses of the case against him, and the alternative sentences to which he will most likely be exposed. *Rivera v. United States*, No. 10-CR-316 (KBF), 2016 WL 1064605, at *5 (S.D.N.Y. Mar. 14, 2016) (citing *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)). Nevertheless, the ultimate decision whether to plead guilty must be made by the defendant, and counsel's "conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness." *Purdy*, 208 F.3d at 45. In fact, "[f]or counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a

possible defense strategy." *United States v. Belfiore*, 473 F. Supp.3d 72, 94–95 (E.D.N.Y. 2020) (quoting *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). "Therefore, courts have repeatedly rejected ineffective assistance claims merely because defense counsel's advice regarding the chances of winning at trial were overly optimistic." *Belfiore*, 473 F. Supp.3d at 95 (collecting cases).

Under *Strickland*'s second prong, a petitioner must show a "reasonable probability" that, but for counsel's erroneous advice regarding the plea, the petitioner would have accepted the offer. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In making this prediction, courts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney. *Gluzman v. United States*, 124 F. Supp.2d 171, 177 (S.D.N.Y. 2000) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.), *cert. denied* 479 U.S. 937 (1986)).

There is no question in the present case that Petitioner was aware of both the terms of the plea offer and the alternative sentences to which he would most likely be exposed. At a pre-trial conference held on May 4, 2011, the Court discussed the government's offer of a plea agreement with the government, Petitioner and a co-defendant, and their respective counsel:

> [PROSECUTOR]: . . . [The offer is] an open-ended plea with a Guideline range of – with a plea to Counts 1 and 2, dismissal of Counts 3 and 4, but with an aggregate term on 1 and 2 from 270 to 322 [months].
>
> THE COURT: When you say aggregate term, is one of the counts a gun charge?
>
> [PROSECUTOR]: Yes.

22

THE COURT: How does it break down?

[PROSECUTOR]: Sixty months on Count 2; 210 to 262 on Count 1, which is the RICO violation.

* * *

THE COURT [to co-defendant]: As I think I may have explained to you, but I will again. Of course, obviously, [defense counsel], his responsibility is to make a recommendation to you based on your ultimate exposure, but, as I think I explained to you, the final decision on whether to plead guilty or not, whether to accept the plea agreement or not is strictly up to you. Do you understand that?

* * *

THE COURT [to Petitioner]: You understand that the government has extended an offer for you to plead to two counts, one of which is a weapons charge, with an aggregate sentence of 270 to 322 months, which means that if you had accepted would be exposed to 22 years, 8 months in prison to 26 years, 10 months. Do you understand that?

[PETITIONER]: Yes.

THE COURT: Do you understand, however, if convicted of everything after trial, you could -- is it mandatory life?

[PROSECUTOR]: It's not mandatory life. There, with – it's maximum exposure is life imprisonment based upon the crimes of violence and drug trafficking charges. Once this is rejected, I will be filing an 851 on the narcotics.

THE COURT: As to both?

[PROSECUTOR]: As to both, which will raise the mandatory minimum to 20. But in this case, there are two 924(c) charges, and the jury could certainly find both, and it would be consecutive on either. So, they could potentially be looking at 35 just on the 924(c) charges.

THE COURT: And a mandatory 20 [years] on the drug charge.

[PROSECUTOR]: Right, so 55 [years].

THE COURT: So, again, I want to correct myself, just in case I gave you the

23

false impression . . . if convicted of all of the charges . . . you . . . would be looking at a mandatory minimum of 55 years imprisonment; is that correct?

[PROSECUTOR]: Yes.

* * *

THE COURT [to Petitioner]: . . . would it be your decision, after conferring with [trial counsel] . . . and listening to his advice, to reject the plea offer; is that correct?

[PETITIONER]: Yes.

Hrg. Tr., 3:22–7:17, Oct. 28, 2014, ECF No. 1069.

The question for this Court to consider, then, is whether or not trial counsel's advice to Petitioner regarding the strength or weaknesses of the government's case against him was completely unreasonable. After a thorough review of the entire record[1] before this Court, the Court finds that Petitioner's showing in this regard fails to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi*, 529 F.3d at 141. In particular, Petitioner's suggestion that trial counsel believed he was defending a RICO claim under 18 U.S.C. § 1962(c) is controverted by two matters of plain record: (1) the indictment itself specifies that the RICO claim against Petitioner was for a violation of 18 U.S.C. § 1962(d) (Second Superseding Indictment, ¶ 58, Nov. 10, 2010, ECF No. 592), and (2) the government's notice of its reliance on a Pinkerton theory of liability with respect to the gun charges makes clear that the RICO count is based on 18 U.S.C. § 1962(d) for participating in a conspiracy to violate the other

---

[1] The Court notes that trial counsel for Petitioner, J. Glenn Davis, Esq., is not available to further supplement the record on this matter as he is deceased. *See* N.Y. Attorney Detail Report, "J. Glenn Davis," Registration No. 1812908, https://iapps.courts.state.ny.us/attorneyservices/wicket/page?3 (last accessed May 13, 2022).

provisions of the RICO statute (Not., Apr. 19, 2011, ECF No. 654).

Moreover, trial counsel's summation attempted to focus the jury on the government's failure to prove a conspiracy, as it was required to do for a violation of 18 U.S.C. § 1962(d):

> The government has to prove two conspiracies in this particular case. The first one, of course, is a drug trafficking conspiracy. The second one is what they call the RICO conspiracy.
>
> * * *
>
> Now, I told you in the beginning in my summation there is no easy way to prove the existence of a conspiracy. There is no easy way to prove the existence of an enterprise. This is not an organization that is listed on the stock exchange or has officers has offices in downtown Buffalo. There are no membership lists, there are no board of directors, but what I did say to you that the proof that government is going to introduce is going to show a group of young men living on the east side of Rochester, an unorganized group, a group of individuals who grew up together in the same neighborhood, whose parents, lots of them knew each other, and, in some instances, whose parents were also involved in drug trafficking. And these young men grew up and they started engaging in trafficking and drugs in their neighborhood, but there was no organization they did what they wanted it to do when they wanted to do it and with whom they wanted to do. No one told them what to do it. They didn't accept directions from anybody. And it was every person for himself. And I believe if you look at the evidence that has been introduced concerning a conspiracy and enterprise, that is exactly what you're going to see.

Trial Tr. (Vol. XIX), 3441:21–3443:2, Dec. 15, 2015, ECF No. 1220.

In short, Petitioner's bald assertions that his trial counsel improperly advised him regarding the plea offer from the government are not sufficient to rebut the strong presumption that trial counsel provided effective assistance, particularly in light of the record evidence supporting the Court's perception that trial counsel possessed adequate understanding of the charges against his client.

8. Petitioner's claim that trial counsel was ineffective because he failed to resolve a

conflict of interest with counsel to one of his co-defendants is without merit because there was no conflict of interest.

Lastly, Petitioner states that he informed his trial counsel that counsel for one of Petitioner's co-defendants had been the prosecutor on a case against Petitioner in New York state court. He argues that this created a conflict with Petitioner's interests, and that trial counsel's failure to resolve the conflict constitutes the ineffective assistance of counsel. The government maintains, however, that Petitioner's argument fails because Petitioner does not show a conflict between Petitioner's interests and the interests of *his* trial counsel. Mem. in Opp. at 22–23. The Court agrees with the government.

As the Second Circuit has made clear:

A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel . . . .

* * *

While a defendant is generally required to demonstrate prejudice to prevail on a claim of ineffective assistance of counsel . . . . this is not so when counsel is burdened by an actual conflict of interest . . . . Prejudice is presumed under such circumstances . . . . Thus, a defendant claiming he was denied his right to conflict-free counsel based on an actual conflict need not establish a reasonable probability that, but for the conflict or a deficiency in counsel's performance caused by the conflict, the outcome of the trial would have been different. Rather, he need only establish (1) an actual conflict of interest that (2) adversely affected his counsel's performance . . .

* * *

An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action . . . .

*United States v. Schwarz*, 283 F.3d 76, 90–91 (2d Cir. 2002) (internal quotation marks and citations omitted).

26

Here, Petitioner neither alleges nor demonstrates that his trial counsel had a conflict of interest. He alleges merely that counsel for a co-defendant had prosecuted him for a separate crime in a state court prior to being appointed counsel for co-defendant, and that this was a conflict of interest because the charges in that case were "brought up numerous times" throughout the trial. Letter, Dec. 9, 2019, ECF No. 1500. Assuming Petitioner's allegations to be true, that fact does not create a divergence of interests between Petitioner and his trial counsel with respect to material factual or legal issues in Petitioner's case, and there is no evidence that it in any way influenced any course of action taken by trial counsel in the case. Accordingly, the Court finds that trial counsel was not ineffective as it relates to any potential conflicts between Petitioner and counsel for his co-defendant.

## CONCLUSION

In summary, the Court grants Petitioner's application [ECF No. 1431] in part, and denies it in part. Specifically, the application is granted only with respect to Petitioner's request to vacate his conviction on Count 2 for knowingly and unlawfully possessing a firearm in furtherance of a RICO conspiracy in violation of § 924(c), and denied in all other respects. Accordingly, it is hereby

ORDERED that Petitioner's conviction on Count 2 for knowingly and unlawfully possessing a firearm in furtherance of a RICO conspiracy in violation of § 924(c) is hereby vacated; and it is further

ORDERED that Petitioner's habeas application pursuant to 28 U.S.C. § 2255 is denied in all other respects; and it is further

ORDERED that Petitioner's counsel shall contact the Court no later than fourteen

27

days from the date of this order to schedule a plenary resentencing on Petitioner's remaining three convictions: RICO conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; and knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy, in violation of 18 U.S.C. § 924(c).

Petitioner having not made a substantial showing of the denial of a constitutional right on any ground not included within the partial grant of the application, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

SO ORDERED.

Dated:   May 17, 2022
         Rochester, New York


_____/s Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge